**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| BP PRODUCTS NORTH AMERICA INC., | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-03-5218 |
| INTERNATIONAL MAINTENANCE CORPORATION, | § § § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This case is before the Court on the Motions to Exclude Testimony and Report of Domenick Costagliola [Docs. # 58, # 63, # 66, # 69, # 72, # 75, # 78, # 81, # 84, and # 90], the Motion to Exclude Expert Opinions of Leslie Esquivel [Doc. # 101], and the Motion to Exclude Certain Expert Opinions of Robert E. Gregory [Doc. # 102]. Also pending are Motions for Partial Summary Judgment filed by Defendant International Maintenance Corporation ("IMC") [Doc. # 99] and by Plaintiff BP Products North America Inc. ("BP") [Doc. # 103]. Having reviewed the full record in this case and the applicable legal authorities, the Court concludes that the motions should be **granted in part and denied in part** as explained herein.

**I.   FACTUAL BACKGROUND**

In January 2001 and in March 2001, IMC and BP entered into contracts for IMC to perform tank maintenance at BP's facility in Texas City, Texas. The contracts provided that BP would pay IMC a fixed rate by classification for each hour of work performed by an IMC

employee. IMC performed work for BP pursuant to these contracts throughout 2001 and 2002 and into 2003.

In June 2003, BP received a phone call from an individual claiming to be the common-law spouse of Stacy Dickerson, IMC's on-site timekeeper at the BP facility. The caller alleged that Ms. Dickerson was having an affair with Mike Whitmire, IMC's job site superintendent. The caller also alleged that Ms. Dickerson and Mr. Whitmire were billing for time when they were not at work, were improperly charging per diem, were improperly billing for small tools and truck accessories for Mr. Whitmire's personal use, and were being warned in advance of drug testing. BP notified IMC of the allegations and IMC conducted an unannounced drug test of all employees on June 17, 2003. Mr. Whitmire tested positive for marijuana use and his employment was terminated the next day. David Atchley, the Tank Manager for IMC, assumed the site superintendent responsibilities after Mr. Whitmire was fired.

Meanwhile, beginning in November 2002, Swailes and Company, Inc. ("Swailes"), an independent investigation firm, worked for BP to investigate BP employee fraud and contractor fraud or billing errors. After the June 2003 phone call, Swailes investigated the billing and other practices of IMC at the BP facility.

In September 2003, Swailes published an Interim Report which challenged a number of IMC's billing practices, procedures, and records. After discussions among Swailes, BP, and IMC failed to resolve the issues, BP sent a letter to IMC on October 1, 2003 demanding reimbursement of almost $2 million dollars. This lawsuit followed.

## II.     MOTIONS TO EXCLUDE EXPERT TESTIMONY

### A.     Standards for Expert Testimony

"[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify . . . in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. The trial judge must determine as an initial matter whether the proffered witness is qualified to give the expert opinion he seeks to express. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

Under *Daubert*, the district court is to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts at issue." *Skidmore v. Precision Printing And Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (citing *Daubert*, 509 U.S. at 592-93). This so-called "gate-keeping" obligation applies to all types of expert testimony, not just "scientific" testimony. *Id.* at 617-618 (citing *Kumho Tire*, 526 U.S. at 147). The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 151. The Court "must ensure the expert uses reliable methods to reach his

opinions; and those opinions must be relevant to the facts of the case." *Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

Reliability and validity do not require certainty, but must be demonstrated by evidence that the knowledge is more than speculation. *Daubert*, 509 U.S. at 590. The Court must consider (1) the validity of the scientific principles used; (2) the accuracy of the data relied upon by the expert; and (3) the correctness of the application of the scientific principles to the relevant data. *See Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997); *Marcel v. Placid Oil Co.*, 11 F.3d 563, 567 (5th Cir. 1994). Four factors to consider in determining the reliability of proffered scientific evidence are (1) whether the theory or procedure has been subjected to testing; (2) whether it has been subjected to peer review and publication; (3) the rate of error and the existence of standards controlling the theory or procedure; and (4) whether it has attained general acceptance. *Watkins*, 121 F.3d at 989 (citing *Daubert*, 509 U.S. at 593-94). This analysis, however, is a flexible one. "[N]ot every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy*, 394 F.3d at 325.

Rule 704 of the Federal Rules of Evidence provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." FED. R. EVID. 704. The Fifth Circuit, however, "has repeatedly held that Rule 704 does not allow an expert to render conclusions of law." *United States v. $9,041,598.68*, 163 F.3d 238, 255 (5th Cir. 1998) (citing *Snap-Drape, Inc. v. Comm'r of Internal Revenue,* 98 F.3d 194 (5th Cir.1996)).

The burden is on the party offering the expert testimony to establish that it is admissible. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (*en banc*), *cert. denied*, 526 U.S. 1064 (1999). The party offering the challenged expert opinions need not, however, prove "that the expert's testimony is correct." *Id.* The test addresses reliability and relevance; it "does not judge the expert conclusions themselves." *Guy*, 394 F.3d at 326. The trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Primrose Operating Co. v. Nat'l Amer. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *Daubert*, 509 U.S. at 596).

**B.    Testimony and Report of Domenick Costagliola**

BP has designated Domenick Costagliola as an expert on damages. Costagliola is a management consultant and professional engineer who has worked extensively in the engineering and construction industry. He has served as the project engineer for a number of major construction projects and has substantial experience in the administration of contracts, including invoicing in compliance with contractual requirements. He also has experience monitoring accounts payable and receivable, and he has served in other cases as an expert in engineering, construction, project management, and the economic and financial analyses necessary for damages calculations.

IMC challenges most of Costagliola's opinions. In Opinion C.1 [Doc. # 58],[1] Costagliola opines that BP was not required to pay IMC for certain hours worked by IMC employees because IMC did not submit time sheets as required by the contract. In Opinion C.2 [Doc. # 63], the expert opines that certain invoices are invalid and should not be paid because they did not have correct invoice numbers on them. In Opinion C.3 [Doc. # 66], Costagliola states that BP should not have to pay IMC for work performed by certain subcontractors because IMC failed to obtain proper approval as required by the contract. In Opinion C.4 [Doc. # 69], the expert opines that BP should not have to pay charges for certain small tools which should have been included in overhead rather than charged as reimbursable. Opinion C.5 [Doc. # 90] relates to labor charges which are allegedly based on inaccurate or incomplete gate log information. In Opinion C.6 [Doc. # 72], BP's expert states that IMC improperly charged BP for per diem paid to employees who lived more than sixty miles away from the BP plant. Opinion C.7 [Doc. # 75] relates to mid-term craft rate increases that BP's expert claims were a mistake and, therefore, should not be paid by BP. In Opinion C.9[2] [Doc. # 78], Costagliola opines that BP should not be required to pay any part of Mr. Whitmire and Ms. Dickerson's wages. In Opinion C.9.c [Doc. # 81], Costagliola states that BP should not have to pay Atchley's wages because his salary as Tank Manager

---

[1]   The document number refers to the Motion to Exclude which relates to that opinion.

[2]   Opinion C.8 relates to an outstanding claim by BP for damage to one of its tanks. The amount claimed by BP for that damage is not included in Costagliola's damages calculation and IMC does not challenge Opinion C.8.

was part of IMC's overhead. Costagliola also expressed the opinion [Doc. # 84] that BP should recover from IMC the costs of Swailes's investigation.

In Opinions C.1 (regarding the submission of time sheets), C.3 (regarding approval of subcontractors), C.4 (regarding charges for small tools and consumables), and C.6 (regarding per diem charges for IMC employees), Costagliola bases his opinions on his understanding of the contract between IMC and BP. IMC argues that Costagliola is not qualified to express an opinion regarding contract interpretation, which is a legal issue for the Court. The parties' contract is unclear regarding which form of time sheet must be submitted daily, what form of approval is required for subcontractors, what qualifies as a "small tool," and when per diem is properly payable to IMC employees. Costagliola has a Masters Degree in Business Administration and extensive experience dealing with invoices to ensure they comply with contractual requirements in the engineering and construction industries. As a result, he may present evidence based on his education and experience regarding what billing was proper or improper based on his understanding of the meaning of the contract provisions when considered in light of industry practices.[3] There are fact issues concerning the correct interpretation of the pertinent contract provisions. If Costagliola's understanding of those contract provisions proves to be correct, his calculations are relevant and may assist the jury. If his contract interpretation is incorrect, however, his

---

[3] It is the Court's practice for experts to present their opinions through their testimony, not through their reports. The reports of the experts in this case, therefore, will not be admitted into evidence and will not be provided to the jury.

opinions will not be relevant. His Opinions C.1, C.3, C.4, and C.6 are not excludable – certainly not at this juncture – and the motions addressing these Opinions will be denied.

IMC argues that Costagliola's Opinions C.2 (regarding invalid invoices) and C.5 (regarding the labor overcharges) are based on inaccurate or incomplete information. Opinion C.2 focuses on a problem IMC admits it had with invoices. Neither BP's expert nor IMC's expert can reconcile the differences completely. Opinion C.5 focuses on labor charges which Costagliola states are excessive based on his examination and evaluation of data generated from BP's gate logs of each employee's documented access to the BP facility. IMC argues the charges are not excessive because the gate log information used by Costagliola is inaccurate and incomplete. These challenges to Costagliola's opinions turn on fact issues for the jury as to the reliability of the invoices and gate logs, and thus the challenges to these experts are more properly the subject of cross-examination and are not the basis to exclude the testimony.[4]

Opinion C.7 relates to mid-term craft rate increases which IMC requested to attract and retain employees in certain crafts. It is undisputed that IMC requested the increases and that the proper BP employee approved increased rates for six crafts, thus causing the higher pay rates to be entered into BP's payroll system. Costagliola opines that BP should not be required to pay these increased rates because the BP employee who approved them "made

---

[4] An exception is the opinion regarding labor overcharges for 2001. Costagliola conceded that he did not have any data for that year and simply decided to take the 2002-03 data and assume it would be the same for 2001. Such raw assumptions are not the proper basis for expert testimony and this part of Opinion C.5 will be excluded.

a mistake." Costagliola is not qualified as an expert in any field which would permit him to opine whether or not the employee's approval of the rate increases was a "mistake," rather than some intended action or other explanation. The employee who approved the increases may testify as a fact witness about why she authorized the changes to these craft rates, but this is not a proper subject for expert testimony from Costagliola. The motion to exclude his opinion on this subject [Doc. # 75] will be granted.

Costagliola opines that BP should not be required to pay – and should be reimbursed for payments already made – for wages paid to Mr. Whitmire (C.9.a.), Ms. Dickerson (C.9.b.), and Mr. Atchley (C.9.c). Costagliola's opinion regarding wages paid to Mr. Whitmire and Ms. Dickerson is based on his perception that they were not doing a good job. Costagliola admits that there is no methodology involved in this opinion and that he is not aware of any case in which he or any other expert has opined that wages should not be paid to poor employees. Indeed, when it was discovered that Costagliola's calculations were in certain respects inaccurate, he was disinclined to agree that his wages should not be paid. IMC's challenge to Costagliola's opinions regarding Whitmire and Dickerson's wages [Doc. # 78] is well-taken and will be granted.

Costagliola's opinion regarding Atchley's wages is that Atchley's salary as Tank Manager was part of IMC's overhead and was not chargeable to BP. Costagliola argues that Atchley was getting the same salary when he assumed the responsibilities of site superintendent and, therefore, that salary should also be considered overhead even though the site superintendent position was not overhead and wages for that position were

chargeable to BP. This opinion, based on Costagliola's experience as a project manager, has some factual foundation since Atchley remained at all times the Tank Manager and was merely performing the responsibilities previously performed by the site superintendent. In any event, the opinion will be subject to cross-examination. IMC's argument – that when Atchley was performing site superintendent work his salary for that work, totaling $9,997.24, should be paid by BP – is one to be presented to the jury and is not a proper basis to exclude Costagliola's contrary opinion.

Finally, Costagliola presents the opinion that BP should recover from IMC for the cost of Swailes's investigation.[5] The Court will instruct the jury on the law regarding the elements of BP's damages. Costagliola's opinion regarding recoverability of Swailes's investigation costs is not admissible.

### C.  **Expert Opinions of Leslie Esquivel**

IMC has designated Leslie Esquivel as an expert witness in this case. Esquivel is a Certified Public Accountant and is the Internal Audit Manager for IMC's parent company. As part of that job, she has years of practical experience in deciphering and implementing contracts to ensure accurate and adequate recordkeeping in compliance with the contractual requirements.

BP challenges certain opinions expressed by Esquivel. Specifically, BP challenges Esquivel's opinions regarding the time sheets issue, prejudgment and postjudgment interest,

---

[5]  The "Investigation Costs - Swailes" is included without further explanation in the Summary of Damages in the IMC Case, Section D to Costagliola's Report.

and IMC's lost profits. With reference to the time sheets issue, IMC correctly notes that Esquivel's opinion is not the legal conclusion that BP's conduct constituted a waiver, but is a factual opinion that BP's conduct caused IMC to believe that BP did not intend to enforce that contract provision. As clarified by IMC, Esquivel's opinion on this issue need not be excluded. As is discussed above in connection with Costagliola's opinion regarding time sheets, the contract language is unclear and both Costagliola and Esquivel are entitled based on their education and experience to testify regarding their respective understandings of the contract provision. Indeed, Esquivel appears to be a fact witness on this subject and, as such, her testimony is admissible.

BP's challenge to Esquivel's proffered opinion regarding pre- and post-judgment interest is well-taken. The applicable interest rate is a question of law. *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 435 (5th Cir. 2003). In a breach of contract case under Texas law, prejudgment interest is governed by Texas law and postjudgment interest is determined in accordance with the Federal statute, 28 U.S.C. § 1961(a). *Id.* As a result, expert testimony on the issue is not permissible and Esquivel's opinions regarding interest will be excluded.

Esquivel's opinions regarding IMC's lost profits caused when "IMC was forced to leave the BP plants approximately two months before the completion date of the contracts" must be excluded as irrelevant because IMC's claim for lost profits is not permitted under the parties' contract. Initially, Paragraph 19 of "Attachment A – Terms and Conditions" provides a limitation of liability that neither party shall be liable for "any loss of profit." *See* Master Exhibit 4, Attachment A, ¶ 19. To the extent IMC claims a constructive discharge,

Paragraph 14 of the same contract attachment provides that BP has the right, "with or without cause," to terminate the contract and stop all work being performed pursuant to the agreement. *Id.* at ¶ 14. Because IMC's lost profits claim is precluded by the contract with BP, Esquivel's opinions regarding the amount of lost profits are irrelevant and must be excluded.

        D.      <u>**Expert Opinions of Robert E. Gregory**</u>

IMC has designated Robert E. Gregory as an expert on contract compliance and industry standards. Gregory appears to have approximately six years of experience as the president of a maintenance company that performed industrial maintenance. He also has many years of experience in construction engineering.

BP argues that Gregory's report should be excluded because he conducted an inadequate review of the evidence in the case. For example, BP complains that Gregory did not read full deposition transcripts, but instead read only certain portions; that he did not examine all the invoices; and that he did not review Esquivel's audit report. The Court concludes that Gregory's review was not so inadequate that his opinions are inadmissible. Whether the alleged inadequacy of Gregory's evidence review should lead the jury to reject his opinions may be explored through cross-examination at trial.

BP also challenges broad categories of Gregory's opinions. BP challenges comments throughout Gregory's report regarding BP's motivation for its conduct and characterizing BP's motivation as bad faith. BP also challenges Gregory's opinions regarding what one party would have done in response to conduct by the other party. Gregory is not qualified

to offer an opinion regarding motivation or expected behavior. His background is in industrial maintenance and construction engineering, not human behavior. As a result, Gregory's comments regarding bad faith, improper motivation, and how one party would have responded to conduct by the other party are excluded.

BP also objects to Gregory's comments regarding what is "normal" on a maintenance project or what would be contained in a "normal" maintenance contract. BP and IMC were required to act in accordance with *their* contract, whether or not it would be considered "normal." Consequently, Gregory's comments regarding what is "normal" are not relevant and not admissible.

Gregory, much like Costagliola and Esquivel, offered expert opinions based on a certain interpretation of the terms of the contract between BP and IMC. For example, based on his experience with industry practice on construction and industrial maintenance projects, Gregory opines that IMC submitted time sheets in a timely fashion and in compliance with the contract. As was discussed with reference to related opinions by the other experts in the case, the contract is unclear in this and other areas and expert testimony is admissible to assist the Court and jury.

Gregory also offers opinions regarding why there is a variance between the gate logs and IMC's invoices for hours worked by its employees. It is undisputed that the variances exist, and Gregory's proffered explanations are relevant and based on his experience. BP's challenge to these opinions is denied.

### III.   MOTIONS FOR SUMMARY JUDGMENT

#### A.   Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). An issue is material if its resolution could affect the outcome of the action. *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the

burden of proof at trial. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). The movant meets this initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Id.* If the movant meets this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (quoting *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1998)). A dispute over a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* (quoting *Brenoettsy*, 158 F.3d at 911); *see also Quorum Health Resources, L.L.C. v. Maverick County Hosp. District*, 308 F.3d 451, 458 (5th Cir. 2002).

### B. IMC's Motion for Partial Summary Judgment

IMC seeks summary judgment on BP's breach of contract, fraud, and negligent misrepresentation claims, arguing that BP has failed to present evidence that it has been damaged by IMC's conduct. BP has responded with evidence from Costagliola and from other witnesses – some employed by IMC – to raise a genuine issue of material fact regarding BP's claims for damages.

For example, with reference to the breach of contract claim, BP has presented evidence that the gate logs did not support IMC's invoices for hours worked by its employees, that improper invoices caused numerous accounting problems that have not been completely resolved, and that IMC used contractors for which IMC did not obtain specific prior written approval from BP.

With reference to the fraud and negligent misrepresentation claims, BP has presented evidence that IMC made false representations to BP regarding the hours worked by IMC's employees and the materials used to perform work at the BP facility, and that IMC charged BP per diem for employees who lived in the same city (Texas City) where the BP facility was located.

Because BP has presented evidence which raises a genuine issue of material fact in support of its breach of contract, fraud, and negligent misrepresentation claims, summary judgment is inappropriate and IMC's motion must be denied.

### C. BP's Motion for Partial Summary Judgment

BP seeks summary judgment on IMC's counterclaims for breach of contract, violation of the Texas Theft Liability Act, fraud, and for exemplary damages and for lost profits. As to the breach of contract claim, IMC alleges that BP breached the contract by failing to pay for IMC's work. BP argues that the contract allows BP to withhold any amounts disputed in good faith, and that IMC's Tank Manager, David Atchley, had admitted that there was a good faith dispute regarding certain charges for which payment was withheld. Atchley did not state, however, that the full amounts withheld by BP were the subject of a good faith dispute. The contract does not permit BP to withhold payment for all charges based on a dispute involving a small percentage of those charges – even if the dispute is in good faith. As a result, summary judgment on the breach of contract claim is denied.

IMC alleges that BP violated the Texas Theft Liability Act and engaged in fraud by obtaining services from IMC with the intent to avoid payment, specifically by agreeing to

provide payment for the services and then failing to make such payment. BP seeks summary judgment on these two claims, arguing that BP never promised to pay IMC with the intent not to make payments as promised. IMC responds that BP promised in the contract to make payments for work performed by IMC and, beginning in August 2003, BP knew it was not going to pay for work IMC had performed and was continuing to perform. In support of its position, IMC has presented the handwritten notes of BP's superintendent of maintenance commercial services, Carol Engelder. Ms. Engelder's notes of a meeting on August 19, 2003, together with her deposition testimony, reflect that BP was at that time working on an "exit strategy" to replace IMC and intended to withhold further payment. It was not until six weeks later, October 1, 2003, that BP informed IMC that it did not intend to pay for work performed, including work performed between August 19, 2003 and October 1, 2003. IMC's evidence raises a genuine issue of material fact and summary judgment is not appropriate on the Texas Theft Liability Act or fraud claims.

BP also seeks summary judgment on IMC's request for exemplary damages in connection with its fraud counterclaim. BP argues that there is no evidence of fraud but, as is discussed in the preceding paragraph, IMC has presented evidence which raises a genuine issue of material fact in connection with its fraud claim. BP also argues that there is no evidence of the level of misconduct necessary to support an award of exemplary damages. The Court will deny BP's motion for summary judgment on the exemplary damages issue at this time, but the denial is without prejudice to BP presenting an appropriate motion at the close of the evidence at trial.

BP seeks summary judgment on IMC's claim for lost profits allegedly caused when IMC left the BP facility approximately two months before the completion of the contract. For the reasons discussed and the evidence cited in connection with the Court's ruling excluding the testimony of Ms. Esquivel on the issue of lost profits, BP is entitled to summary judgment on this claim. Although the contract limits recovery of other consequential damages to $2,000,000, it further limits recovery by precluding all recovery of "loss of profit or loss of expected sales revenue." *See* Master Exhibit 4, Attachment A, ¶ 19. The contract is clear and unambiguous in this respect, and BP is entitled to summary judgment on IMC's claim for lost profits.

### IV.   CONCLUSION AND ORDER

The Court has considered the parties' challenges to the opposing parties' experts' opinions and has evaluated the opinions under the standards of *Daubert* and its progeny. The Court has also considered the parties' motions for partial summary judgment. Based on the Court's review of the record as discussed herein, it is hereby

**ORDERED** that IMC's Motions to Exclude Testimony and Report of Domenick Costagliola [Docs. # 58, # 63, # 66, # 69, # 72, # 81, and # 90] are **DENIED** (with the exception of that portion of Doc. # 90 which relates to alleged labor overcharges for 2001) and IMC's Motions to Exclude Testimony and Report of Domenick Costagliola [Docs. # 75, # 78, and # 84] are **GRANTED**. It is further

**ORDERED** that BP's Motion to Exclude Expert Opinions of Leslie Esquivel [Doc. # 101], and BP's Motion to Exclude Certain Expert Opinions of Robert E. Gregory [Doc. # 102] are **GRANTED IN PART AND DENIED IN PART** as set forth herein.  It is further

**ORDERED** that IMC's Motions for Partial Summary Judgment [Doc. # 99] is **DENIED** and BP's Motion for Partial Summary Judgment [Doc. # 103] is **GRANTED IN PART AND DENIED IN PART** as set forth herein.  It is further

**ORDERED** that the parties must engage in good faith mediation to be completed by **June 30, 2005**.  It is further

**ORDERED** that this case remains scheduled for docket call at 4:00 p.m. on June 10, 2005, but the deadline for the parties' Joint Pretrial Order is extended to **June 7, 2005**, with a courtesy copy delivered to chambers that same day.  Any remaining discovery disputes will be addressed at docket call.  The Court can schedule this case for a preferential trial setting beginning with jury selection at **9:00 a.m. on Friday, August 12, 2005**.  The Court expects the trial of this case will last no more than five (5) days.

SIGNED at Houston, Texas, this **27th** day of **May, 2005**.

_Nancy F. Atlas_
Nancy F. Atlas
United States District Judge